J. Maurice Gray v. Commissioner.
Gray v. Commissioner
Docket No. 38172.
United States Tax Court
T.C. Memo 1954-225; 1954 Tax Ct. Memo LEXIS 21; 13 T.C.M. (CCH) 1137; T.C.M. (RIA) 54331; December 17, 1954, Filed *21 J. Maurice Gray, Esq., 1421 Chestnut Street, Philadelphia, Pa., pro se. Edward Pesin, Esq., for the respondent. MURDOCK Memorandum Findings of Fact and Opinion The Commissioner determined a deficiency in the petitioner's income tax for the calendar year 1948 in the amount of $686.27. The sole question presented is whether the disappearance of the petitioner's wallet occurred under such circumstances as to entitle him to a deduction for a loss arising from theft, under section 23(e)(3) of the Internal Revenue Code of 1939. Findings of Fact The petitioner filed his individual income tax return for 1948 with the collector of internal revenue for the first district of Pennsylvania. The petitioner had practiced law in Philadelphia for a number of years. He was in Miami Beach, Florida, in April 1948 as a guest in a private residence. He took a walk before breakfast on April 9, 1948, and returned in a taxi cab from his walk onto the driveway of the house at which he was staying. He was dressed at the time in informal summer clothes which included a loose sports shirt which hung down outside the slacks which he was wearing. He was carrying in one of his trouser pockets *22 a billfold type wallet which he withdrew at the conclusion of the drive in order to obtain a paper dollar or two which he used to pay the taxi cab driver his fare and a tip. He was overheated from his walk and went up the stairs in the house to change his clothes, as a result of which he discovered, 5 or 10 minutes after the cab had departed, that his wallet was missing. He searched the driveway and the areas of the house through which he had passed, without success, and immediately telephoned the cab company to report his loss. He was informed within an hour that the cab he had used had been contacted but that a thorough search failed to reveal his wallet. He was also informed that this cab had transported two or more loads of passengers in the interim between his use of it and the search by the cab company. The petitioner, on the night of April 8th, had examined the contents of the wallet and found that it contained about $1,000 in currency. It also contained several cards and a memorandum which gave his office address and telephone number in Philadelphia and the telephone number and address of the house in Miami Beach at which he was then a guest. The petitioner advertised *23 his loss in two Miami daily newspapers for three or four days. Neither the wallet nor any of its contents were ever recovered by the petitioner and he never learned what happened to them. The petitioner "was insured against larceny" but liability on the policy was limited to $100 with respect to currency. The insurance company reimbursed him in the amount of $120, $20 representing the value of the wallet and $100 representing the liability for currency lost. The petitioner claimed a deduction of $897 for a loss from theft on his return for 1948. The Commissioner, in determining the deficiency, disallowed the deduction. Opinion MURDOCK, Judge: There is no question about the known facts in this case. The petitioner has no distinct recollection of whether he was inside the cab or outside the cab when he was handling his wallet while paying the driver, but he assumes that he followed his habit of settling with the driver while still inside the cab, and he assumes further that he returned the wallet to his pocket with his left hand while still seated in the cab. One of his theories is that he may have tucked some of his sport shirt into the pocket with the wallet, and when he straightened *24 up the shirt flipped the wallet out of his pocket. Of course, the fact of the matter is that the petitioner does not know what became of his wallet and its contents. The statute allows a deduction for a loss of this kind only where it results from theft and the petitioner is in the unfortunate position of not being able to prove that there was any theft of his money. This case is not distinguishable in principle from Mary Frances Allen, 16 T.C. 163. The evidence in neither case shows that there was any theft of the lost article. The only difference between the cases is in the circumstances from which the suspicion might arise that the lost article might have been stolen. But the evidence in neither case gives rise to more than a suspicion or a showing of a possibility that the article might have been stolen. The wallet lost by this petitioner was relatively large and it contained identifying papers and currency. The brooch lost by Mary Frances Allen was relatively small and its value was not so apparent. However, there was strong evidence to support the inference that the brooch had been found, whereas the evidence here is not nearly as strong to support the inference *25 that the wallet was ever found. Various things might have happened to the wallet as, for example, it might have fallen some place where it was not observed, into water or a sewer, or it might have been carried off by a dog. The evidence in this case is not stronger than that in the Allen case in which the Court could not presume that the article was found and misappropriated by the finder. There is no more reason to find theft here. Decision will be entered under Rule 50.